IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EMERSON YAZZIE and HELEN YAZZIE
as Guardians and Next Friends of
ERNEST YAZZIE, and his minor children, M.J.Y.,
S.Y., and B.J.Y.,

    Plaintiffs,

vs.                              Civ. No. 12-479 KG/GBW

THE BOARD OF COUNTY COMMISSIONERS OF
SAN JUAN COUNTY, THE CITY OF BLOOMFIELD,
CORRECTIONAL HEALTHCARE COMPANIES, INC., d/b/a
CHC Companies, Inc., and/or d/b/a Correctional Healthcare
Management, Inc., MICHAEL KOVACS, THOMAS C. HAVEL,
ANDY DARBY, NANCY BAUER, MAHRANDA GALLEGOS,
BRYAN BANYACYA, NATHANAEL BANKS,
DURANDA HARRISON, SHAUN ROBERTS, MARCELLA
COOLIDGE, BRANDON CROCKETT, BOBBY SIMPSON, and
JOHN/JANE DOES 1-4, in their Individual Capacities,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Bloomfield Defendants' Motion for Summary Judgment on Counts I, II, V, and VI of Plaintiffs' First Amended Complaint and Memorandum in Support (Motion for Summary Judgment), filed on November 13, 2012.  (Doc. 49).  By stipulation, the parties agree to address only that part of the Motion for Summary Judgment in which Defendant Andy Darby, a Bloomfield police officer, argues that he is entitled to qualified immunity for the 42 U.S.C. § 1983 claims alleging violations of the Fourteenth and Fourth Amendments brought in Count I of Plaintiffs' Second Amended Complaint for Civil Rights Violations, Negligence, Breach of Contract, Loss of Consortium, Declaratory Relief and Other

Tortious Conduct (Second Amended Complaint) (Doc. 72).[1] *See* (Docs. 53 and 78). Plaintiffs responded to Defendant Darby's qualified immunity arguments on February 15, 2013, and Defendants City of Bloomfield, Michael Kovacs, and Darby replied on March 29, 2013. (Docs. 83 and 92). Having reviewed the relevant portion of the Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court (1) denies the part of the Motion for Summary Judgment seeking qualified immunity for Defendant Darby on the Fourteenth Amendment claim, and (2) grants the part of the Motion for Summary Judgment seeking qualified immunity for Defendant Darby on the Fourth Amendment claim.

This is a civil rights action brought by Ernest Yazzie's parents on behalf of Ernest Yazzie (Yazzie) and his children. Plaintiffs contend that various acts and omissions by Defendants led to Yazzie attempting suicide at the San Juan County Adult Detention Center on May 8, 2010. As a result of the attempted suicide, Yazzie "lost significant cognitive and physical capabilities and is now mentally incapacitated." (Doc. 72) at ¶ 98.

*A. Material Facts Viewed in the Light Most Favorable to Plaintiffs*

   *1. The First Call*

At about 8:00 p.m. on May 7, 2010, Defendant Darby responded to a dispatch call to Yazzie's residence regarding a male with a knife who had possibly stabbed himself. (Doc. 49-1) at ¶¶ 2, 5. Defendant Darby knew that a person stabbing himself is a risk factor for suicide. (Doc. 83-3) at 6. Bloomfield police officer Robert Rothlisberger, Bloomfield police officer Timothy Brown, and Bloomfield police sergeant George Rascon also responded to the call.

---

[1] The Court notes that although Plaintiffs served Defendant Nathanael Banks with the Second Amended Complaint and summons, he has not answered the Second Amended Complaint. *See* (Doc. 95) (returned summons). On the other hand, there is no indication in the court record that Plaintiffs served the Second Amended Complaint on Defendants Mahranda Gallegos and Shaun Roberts.

(Doc. 49-1) at ¶ 4. When Defendant Darby arrived at Yazzie's residence, Sgt. Rascon was speaking with Vanessa Wood, the twenty-seven year old daughter of Yazzie's wife, Karen Watson Yazzie, on the porch of the residence. *Id.* at ¶ 6. *Id.* Sgt. Rascon told Defendant Darby to interview Yazzie, who was sitting in the yard in front of the residence. *Id.* at ¶ 7. Yazzie appeared intoxicated, but did not appear injured. *Id.* at ¶¶ 7-8.

When Defendant Darby asked Yazzie if he had a knife, Yazzie answered, "No." (Doc. 83-4) at 4. Sgt. Rascon overheard this exchange between Yazzie and Defendant Darby and told Defendant Darby that Yazzie was lying and that he had a knife and was trying to hurt himself. *Id.* At that point, Sgt. Rascon was about four feet away from Defendant Darby.[2] (Doc. 83-1) at 4, 5; (Doc. 83-3) at 10. Once Wood retrieved the knife for Sgt. Rascon, Defendant Darby was in a position to see the knife.[3] (Do. 83-1) at 8. Defendant Darby knew that a person is possibly suicidal when that person has a knife and is trying to hurt himself. (Doc. 83-3) at 12.

Defendant Darby also asked Yazzie a few times if he wanted to harm himself. (Doc. 83-4) at 4, 6. Yazzie replied that he did not want to harm himself. *Id.* Defendant Darby understood that people who are suicidal sometimes deny being suicidal to avoid an intervention. (Doc. 83-3) at 13.

At another point during Defendant Darby's questioning of Yazzie, Sgt. Rascon interjected that Yazzie had a knife. (Doc. 83-1) at 6; (Doc. 83-4) at 5. Defendant Darby also told Yazzie that Wood was telling him that Yazzie had a knife and was trying to hurt himself.

---

[2] Defendant Darby later claims that Sgt. Rascon was ten feet away from him and had to yell out that Yazzie was lying and had a knife. (Doc. 49-1) at ¶ 9.

[3] Defendant Darby asserts that he did not see a knife. (Doc. 49-1) at ¶ 8.

(Doc. 83-4) at 6.  Defendant Darby further testified at his deposition that Wood said that Yazzie was suicidal.[4]  (Doc. 83-3) at 4.

Sgt. Rascon then asked Yazzie if he wanted to go to the Detox Center, but Yazzie refused to go.  (Doc. 49-1) at ¶ 14.  Since Yazzie was at his home and was going to go to sleep, the officers did not believe that Yazzie was a danger to himself or others.  (Doc. 49-1) at ¶¶ 14, 15.  The officers left the residence at about 8:30 p.m.  *Id.* at ¶ 16.

   *2. The Second Call*

At about 9:20 p.m., that same evening, Defendant Darby received a second call to Yazzie's home because of a loud argument between a male and female.  *Id.* at ¶ 17.  Officer Rothlisberger responded to this call as well.  *Id.* at ¶ 18.  Defendant Darby spoke with Wood who asked to have Yazzie removed from the residence because he was kicking furniture, urinating on the steps, and acting like he was going to hit her.  *Id.* at ¶ 19.  Yazzie continued to appear intoxicated.  *Id.* at ¶ 20.  During a later investigation of Yazzie's attempted suicide, Defendant Darby told the investigator that during the second call "the female advised that [Yazzie] had a knife to his throat and advised he was going to kill himself."[5]  (Doc. 83-7) at 5.  Defendant Darby might have raised his voice at Yazzie to get his attention.  (Doc. 83-3) at 16.  Defendant Darby left the Yazzie residence at about 9:34 p.m.  Ex. H (CD disk).

   *3. The Third Call*

At about 10:00 p.m. that night, Defendant Darby, Officer Rothlisberger, Sgt. Rascon, and Officer Brown responded to a call of domestic violence at Yazzie's residence.  (Doc. 49-1) at ¶

---

[4] Defendant Darby, however, maintains in his affidavit that Wood never told him that Yazzzie was suicidal, threatened to kill himself, or stabbed himself.  (Doc. 49-1) at ¶ 12.

[5] Defendant Darby now denies knowing that Yazzie had put a knife to his throat or that there was any mention of knives or threat of self-harm by Yazzie during the second call.  (Doc. 49-1) at ¶¶ 13, 21.

4

22. Officer Rothlisberger interviewed Watson Yazzie who claimed Yazzie had pushed her to the ground. *Id.* at ¶ 23. Defendant Darby noted that Yazzie's shirt was torn and he had scratches on his neck. *Id.* Officer Brown determined that Watson Yazzie scratched Yazzie so Officer Brown took Watson Yazzie to his patrol vehicle across the street to place her under arrest. *Id.* at ¶¶ 24-25. Defendant Darby instructed Yazzie not to cross the street to intervene in Watson Yazzie's arrest or else Defendant Darby would take Yazzie to the Detox Center. *Id.* at ¶ 25. Yazzie ignored Defendant Darby's instruction. *Id.* at ¶ 25 (misnumbered). Because of Yazzie's intoxication and his potential to harm himself by wandering onto a street at night, Defendant Darby took Yazzie to the Four Winds Recovery Center in Farmington at about 11:13 p.m. *Id.* Yazzie did not speak about suicide or harming himself during the seventeen-minute drive to the Four Winds Recovery Center. *Id.* at ¶¶ 27-28. Instead, Yazzie insisted that he was not intoxicated, that he wanted to go home, and that he wanted to see his wife. *Id.* at ¶ 28.

   *4. The Fourth Call*

   At about midnight on May 8, 2010, Defendant Darby received a call from dispatch to return to the Four Winds Recovery Center to pick up Yazzie, who was being disruptive and combative. *Id.* at ¶ 29. After interviewing Aaron Simpson, a health care worker at the Four Winds Recovery Center, Defendant Darby arrested Yazzie for battery on a health care worker and for a probation violation.[6] *Id.* at ¶¶ 30-31. During the twelve-minute drive to the San Juan County Detention Center, Yazzie did not indicate to Defendant Darby that he intended to harm

---

[6] Plaintiffs also present evidence that (1) Defendant Darby inadequately investigated the alleged battery; (2) Defendant Darby could have concluded that Yazzie was acting in self-defense; and (3) Defendant Darby ignored the fact that Yazzie injured an arm during the incident. *See* Ex. 17 (CD disk), (Doc. 83-11), (Doc. 83-12), (Doc. 83-14) at 2-3. These facts, however, are not material to the qualified immunity issues discussed *infra*.

himself. *Id.* at ¶ 33. Yazzie, instead, argued that the health care worker had pushed him and beaten him. *Id.*

    *5. Pre-Booking*

At about 12:42 a.m., Defendant Darby and Yazzie arrived at the San Juan County Adult Detention Center where Defendant Darby completed an Arresting/Transporting Officer Questionnaire prior to booking. Defendant Darby answered the following questions in the negative: Question 2, "Has the detainee … engaged in *any* behavior that would be cause for concern?"; Question 3, "Has another individual with knowledge of detainee informed you and/or made comments that suggest that detainee is potentially suicidal and/or has a history of suicidal behavior...?"; and Question 6, "Do you have any other information that would be helpful to us while the detainee is confined in this facility?" (Doc. 49-1) at 14. Defendant Darby did not answer these questions in the affirmative because (1) he had not been thinking about the first call to Yazzie's residence; (2) he did not think Yazzie was suicidal; and (3) he was focused on the battery at the Four Winds Recovery Center. (Doc. 49-1) at ¶ 38; (Doc. 83-7) at 5. Defendant Darby later admitted that considering what occurred during the first call to Yazzie's residence he should have answered Question 3 in the affirmative, i.e., that another individual with knowledge of the detainee, in this case, Wood, had informed Defendant Darby or made comments suggesting that the detainee was potentially suicidal or had a history of suicidal behavior. (Doc. 83-3) at 2 and 8; (Doc. 83-7) at 5. Defendant Darby knew that the San Juan County Adult Detention Center needs information regarding threats of suicide in order to properly classify inmates. (Doc. 83-3) at 6. After being booked, staff at the San Juan Adult County Detention Center did not place Yazzie in protective custody, but instead placed him in the general population where he hung himself several hours later. Had the Questionnaire shown that Yazzie

had a knife earlier that evening and was trying to harm himself, staff at the San Juan Adult Detention Center would have placed Yazzie in a protective setting. (Doc. 83-9) at 6.

B. *Standard of Review*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

    1. *Plaintiffs' Fourteenth Amendment Claim Against Defendant Darby*

        a. *Whether Defendant Darby Violated Yazzie's Fourteenth Amendment Right to Substantive Due Process*

Plaintiffs allege in Count I that Defendant Darby violated Yazzie's Fourteenth Amendment right to substantive due process when he failed to include in the booking Questionnaire information about "Yazzie's suicidal threats and reports of stabbing himself." (Doc. 72) at ¶ 105. Jail suicide claims are treated as claims based on a failure to provide medical care. *Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997). "Under the Fourteenth Amendment's due process clause, pretrial detainees … are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Id.* at 867. The Eighth Amendment provides that a "claim for inadequate medical attention must be judged against the 'deliberate indifference to serious medical needs' test…."

7

*Id.* at 868 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The deliberate indifference test has both objective and subjective components.  *Gaston v. Ploeger*, 229 Fed. Appx. 702, 710 (10th Cir. 2007).  The objective component requires a sufficiently serious medical need and suicide qualifies as a serious medical need.  *Id.*

The subjective component requires "that the defendant acted with a culpable state of mind."  *Id.*  Deliberate indifference requires more fault than negligence or gross negligence but less fault than intentional and malicious conduct.  *Barrie*, 119 F.3d at 869.  Deciding deliberate indifference is typically a question of fact for the jury.  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (whether "official had the requisite knowledge of a substantial risk is a question of fact….").

In a jail suicide case, an official acts with deliberate indifference when the official disregards a substantial risk of suicide.  *Barrie*, 119 F.3d at 869.  To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  A "mere opportunity for suicide, without more," is not enough to impose Fourteenth Amendment liability.  *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1269 (11th Cir. 2005) (internal quotation marks and citation omitted).  Moreover, an officer cannot be liable under Section 1983 if the pretrial detainee did not threaten or attempt suicide and was never considered to be at risk for suicide.  *Id.*  In other words, "officers are entitled to qualified immunity if they had no reason to suspect that the prisoner was a suicide risk."  *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992).  Additionally, intoxication of the pretrial detainee, alone, does not predicate a risk of suicide.  *See Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994).  On the other hand, an officer acts with deliberate indifference when

8

he transfers custody of a detainee to another officer without informing the second officer that the detainee was suicidal. *Gordon*, 971 F.2d at 1095.

Here, viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in favor of Plaintiffs, a reasonable jury could find that (1) Defendant Darby had information during the first and second calls to Yazzie's residence that Yazzie had been threatening to hurt himself with a knife; (2) Defendant Darby knew that hurting one's self with a knife is consistent with a risk of suicide; (3) Defendant Darby knew that Yazzie's denial of self-harm does not negate a risk for suicide; and (4) Defendant Darby learned from Wood that Yazzie was suicidal. A reasonable jury could conclude from this evidence that Defendant Darby was aware of facts from which he could infer that Yazzie was at a substantial risk of hurting himself. Although Defendant Darby denies that he actually drew that inference when he filled out the Questionnaire because he was focused on the incident at the Four Winds Recovery Center and no mention of self-harm arose after the first call to Yazzie's residence. It is significant, however, that (1) only a matter of hours before Defendant Darby filled out the Questionnaire, Defendant Darby knew from the first and second calls to Yazzie's residence that Yazzie was reportedly threatening to hurt himself with a knife; and (2) Defendant Darby subsequently admitted that he should have answered Question 3 of the Questionnaire in the affirmative. A reasonable jury could find from this evidence that Defendant Darby had actually inferred from the events of that evening that Yazzie was at a substantial risk of harming himself, a risk which Defendant Darby should have made known in the Questionnaire. An officer who transfers custody of a detainee to another officer without informing the officer that the detainee was suicidal acts with deliberate indifference. *Id.* Plaintiffs have carried their burden of providing sufficient evidence to show that a reasonable jury could find that Defendant Darby

9

violated Yazzie's Fourteenth Amendment right to substantive due process.

> b. *Whether Yazzie had a Clearly Established Fourteenth Amendment Right to Substantive Due Process*

"In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). The plaintiff, however, "is not required to show that the very conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003). The plaintiff is

> required to demonstrate the unlawfulness was "apparent" in light of established law. Generally, this requires that the plaintiff demonstrate a "substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."

*Id.* (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255-56 (10th Cir. 1998)).

In this case, the Tenth Circuit clearly established in 1997, well before the incidents at issue, that "*[b]ecause jail suicides are analogous to the failure to provide medical care, deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested.*" *Barrie*, 119 F.3d at 867. Based on that law and viewing the evidence in the light most favorable to Plaintiffs with reasonable inferences drawn in their favor, a reasonable officer in Defendant Darby's position would have perceived

that Yazzie presented a substantial risk of harming himself and would have understood that failing to accurately fill out the Questionnaire would be unlawful under the deliberate indifference standard. Plaintiffs have, therefore, demonstrated that Yazzie had a clearly established Fourteenth Amendment right to substantive due process which Defendant Darby violated. Because Plaintiffs have met both prongs for denying qualified immunity to Defendant Darby on the Count I Fourteenth Amendment claim, Defendant Darby is not entitled to summary judgment on that claim.

*2. Plaintiffs' Fourth Amendment Claim Against Defendant Darby*

Plaintiffs allege in Count I that Defendant Darby violated Yazzie's Fourth Amendment right to be free from an unreasonable seizure of his person when Defendant Darby failed "to provide true and accurate information" in the Questionnaire during the booking process. (Doc. 72) at ¶ 101. Plaintiffs argue that making false material statements, or omitting material facts, with reckless disregard for the truth violates the Fourth Amendment's prohibition against unreasonable seizures. The cases Plaintiffs cite to support their argument involve false statements or omissions of fact in affidavits supporting arrest warrants or in furtherance of an involuntary mental health commitment. *Meyer v. Board of County Com'rs of Harper County, Okla.*, 482 F.3d 1232, 1242-43 (10th Cir. 2007) (false statement to obtain involuntary mental health commitment); *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (false statements and omission of facts in arrest warrant affidavit); *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990) (omission of facts in arrest warrant affidavit). Notably, the Fourth Amendment violations in those cases led to seizures by an arrest or otherwise. In this case, Defendant Darby had already seized Yazzie prior to filling out the Questionnaire, and Defendant Darby's seizure of Yazzie would have still ended when the San Juan County Adult Detention Center took

custody of Yazzie, regardless of whether Defendant Darby filled out the Questionnaire with a reckless disregard for the truth. Plaintiffs have not convinced the Court that a reasonable officer, having already arrested an individual, would be aware that failing to correctly fill out a booking questionnaire regarding suicidal tendencies constitutes an unreasonable seizure of a person. As this Court has noted, "the Fourth Amendment is not implicated in the case of 'the suicide of a pretrial detainee.'" *Glover v. Gartman*, 899 F.Supp.2d 1115, 1144 (D.N.M. 2012) (quoting *Barrie*, 119 F.3d at 870). Accordingly, Plaintiffs have not carried their burden of demonstrating that answering booking questions regarding suicidal tendencies with reckless disregard for the truth violates a clearly established Fourth Amendment right to be free from an unreasonable seizure. Defendant Darby is, therefore, entitled to qualified immunity on the Fourth Amendment claim brought against him in Count I.

Having addressed only that part of the Motion for Summary Judgment which addresses the Count I claims against Defendant Darby,

    IT IS ORDERDED that

    1. the Bloomfield Defendants' Motion for Summary Judgment on Counts I, II, V, and VI of Plaintiffs' First Amended Complaint and Memorandum in Support (Doc. 49) is granted in part;

    2. summary judgment will be entered in favor of Defendant Darby on the Fourth Amendment claim raised in Count I of the Second Amended Complaint; and

    3. that claim will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE